IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DIANE M. CRAMLET,

                              Plaintiff,                         OPINION AND ORDER

     v.                                                     12-cv-290-wmc

SUPREME COURT OF WISCONSIN,
and A. JOHN VOELKER, in his official
capacity as Director of State Courts,

                              Defendants.

In this action alleging violations of Title I of the Americans with Disability Act of 1990, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, plaintiff Diane M. Cramlet contends that defendants discriminated against her because of, and failed to provide a reasonable accommodation for, her disability.  The court previously granted in part and denied in part defendants' motion to dismiss, leaving plaintiff with two claims for relief:  an ADA claim against Wisconsin's Director of State Courts A. John Voelker and a Rehabilitation Act claim against the Supreme Court of Wisconsin.  (5/29/13 Op. & Order (dkt. #12).)

Before the court is defendants' motion for summary judgment, raising three grounds for judgment: (1) the ADA claim against Voelker should be dismissed because it does not meet the *Ex parte Young* exception and is moot; (2) the Rehabilitation Act claim against the Supreme Court should be dismissed because the Supreme Court is not the program or activity which allegedly discriminated against Cramlet; and (3) even if these challenges based on the law fail, plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find discrimination.  (Dkt. #16.)  For the reasons that follow, the court will grant defendants' motion for summary judgment, accepting

defendants' first two bases for judgment, mooting consideration of the last, fact-based argument.

## UNDISPUTED FACTS[1]

### A. The Parties

Plaintiff Diane M. Cramlet was a stenographer with the Wisconsin Circuit Court for approximately twenty years.

Defendant A. John Voelker is, and for all times relevant to the complaint was the Director of State Courts.  He is being sued in his official capacity.  Voelker supervises the Office of the Director of State Courts, which has over 200 employees.  Cramlet has never been employed in this Office, though she contends that there was an employer-employee relationship between her and Voelker.  Pursuant to Wisconsin Supreme Court Rules and Wisconsin Statutes, Voelker has authority and responsibility for the overall management of the Wisconsin state court system.   In that capacity, Voelker provides personnel policies and procedures for circuit court judges to follow in supervising their personally-

---

[1] The court finds the following facts taken from the parties proposed findings of fact to be material and undisputed.  Plaintiff's response to defendants' proposed findings of fact and her own submission fails to comply with this court's guidance on summary judgment in the following respects: (1) several of her proposed findings and responses fail to cite to the record (*see, e.g.*, Pl.'s Resp. (dkt. #27) ¶ 23; Pl.'s PFOFs (dkt. #28) ¶¶ 19, 20); (2) many of plaintiff's proposed findings of facts simply repeat defendants' (*see, e.g.*, Pl.'s PFOFs (dkt. #28) ¶¶ 1, 5-12); and (3) plaintiff often cites to the allegations in her complaint as her sole support (*see, e.g.*, Pl.'s PFOFs (dkt. #28) ¶¶ 24, 32, 39-40).  Despite these widespread errors, the court has nonetheless reviewed Cramlet's submissions and has attempted, as best as it could, to set forth the undisputed record.  In addition, because of the court's finding that Cramlet's claims fails as a matter of law, all of the facts are not recounted here.  Rather, the court sets forth only those facts necessary to provide context for its holding.

appointed court reporters.  Voelker determines the qualification level for official court reporters.

Defendant Wisconsin Supreme Court is a governmental agency and the highest court in the state organized under Article VII of the Constitution of the State of Wisconsin and located in the state capital, Madison, Wisconsin.

**B.  Organization of Wisconsin Courts and Receipt of Federal Funding**

The Wisconsin state court system has three agencies for funding purposes:  (1) "agency 625 - Circuit Courts" (Wis. Stat. § 20.625); (2) "agency 660 - Court of Appeals" (Wis. Stat. § 20.660); and (3) "agency 680 -- Supreme Court" (Wis. Stat. § 20.680). Under the state's appropriation structure, the Director of State Courts is funded as an agency 680.   Each court system agency is further defined by program, and by appropriations within each program.

At all times material to her claims, Cramlet was paid wages from funds appropriated to agency 625 -- Circuit Courts.  For payroll purposes, Cramlet's employer was also identified as "Wisconsin Circuit Courts," with the separate Federal Employer Identification Number ("FEIN') used for those courts.  Employees of the Wisconsin state court system who work in the Wisconsin Supreme Court and Court of Appeals receive a W-2 under a different FEIN and with the employer name classified as "Supreme Court / Court of Appeals."

During the relevant period, the Wisconsin Supreme Court and the Office of the Director of State Courts both also received federal funding.  This federal funding,

however, was not used to fund the operations of the Wisconsin Circuit Courts or court reporters working in the Wisconsin Circuit Court, including Cramlet. Among many other duties, the Director of the State Courts is responsible for administering the Supreme Court's federal grant awards.

### C. Court Reporters

Wisconsin Statute § 751.02 governs the employment of court personnel, including court stenographers and provides in pertinent part:

> Each circuit judge may appoint a court reporter to serve in the court or branch of court to which he or she was elected or appointed if the reporter is certified as qualified by the director of state courts. A person appointed by the supreme court or a justice or court of appeals judge or a circuit judge serves at the pleasure of the court or the justice or judge.

Reporters fall into three categories: stenographic court reporter, voice writer court reporter, and digital court reporter. Digital court reporters use digital audio recording ("DAR") equipment. Separate job descriptions exist for digital court reporters and stenographic court reporters. A stenographic court reporter must prepare accurate and timely transcripts, providing coverage to different branches of court within an assigned judicial administrative district. A stenographic court reporter is responsible for verbatim reporting of all court proceedings, whereas a digital court reporter is responsible for verbatim recording of all court proceedings.

Effective July 6, 2008, the Director of State Courts created a separate salary schedule that reduced the wages of digital court reporters. Defendants explain that this difference in wages is due to the fact that a stenographic court reporter is expected to use

4

their own funds to provide equipment, whereas the state pays for DAR-related equipment. In 2011, stenographic court reporters were paid $1.079 per hour more than digital court reporters.

### D. Cramlet's Employment as a Stenographic Court Reporter

In 1982 Cramlet was appointed to her position as Official Court Reporter by then-Judge Frederic Fleishauer, Circuit Court Judge of Portage County, Wisconsin. The Director of State Courts did not hire Cramlet, though as set forth by statute, she (along with all other court reporters) must be "certified as qualified by the director of state courts." Wis. Stat. § 751.02.[2] Each time Cramlet was appointed by Judge Fleishauer, a Court Reporter-Order of Appointment and Court Reporter-Oath of Office form was completed and signed by Cramlet, Judge Fleishauer and the Director of State Courts.

At the time of her hiring and at various times throughout her employment, Cramlet received an Employee Manual. The manual contains a section addressing "Reasonable Accommodation for Qualified Employees and Applicants with Disabilities" that specifically mentions the ADA and Section 504 of the Rehabilitation Act.

### E. Cramlet's Disability, Accommodations and Change in Classification

On February 27, 2007, Voelker received an Employee Workplace Illness or Injury Form completed by Cramlet, reporting an inflamed tendon injury suffered on February 10, 2007. On May 9, 2007, Michael A. Wiener, M.D., performed an Independent

---

[2] The court assumes this is all Cramlet was referring to in maintaining, without citing support in the record, that she had to be "approved" by Voelker. (Pl.'s Resp. to Defs.' PFOFs (dkt. #27) ¶ 23.)

Medical Examination requested by the State of Wisconsin Department of Administration's Bureau of State Risk Management.  Consistent with Cramlet's treating physician, Wiener diagnosed Cramlet with bilateral carpometacarpal joint osteoarthritis. This report was provided to the Office of the Director of State Courts as part of Cramlet's workers' compensation claims administration process.

Cramlet was on leave from February 20, 2007, until July 1, 2007.  She returned to work on July 2, 2007, working a limited number of hours.  Cramlet resumed medical leave on July 10, 2007, until August 21, 2007, returning to work on August 22, 2007.

On August 30, 2007, Voelker received a letter from Cramlet dated August 28, 2007, requesting an accommodation of the installation of electronic recording equipment as an emergency backup in case her disability prevented her from performing her work. On September 14, 2007, Voelker approved Cramlet's request.  After a meeting between Margaret Brady, Human Resources Director with the Office of Director of State Courts, Cramlet and Judge Fleishauer and a memorandum of understanding, the DAR equipment was installed on November 26, 2007.  The parties dispute whether her use of that equipment allowed her to perform the essential functions of her *stenographic* court reporter position.

Beginning in August 2008, consistent with the adoption of a reduced salary schedule for the digital court reporter position, Cramlet was instructed to report separately the hours she worked as a stenographic court reporter and the hours she worked as a digital court reporter (*i.e.*, the hours she used the DAR equipment).  Cramlet was also advised that effective September 14, 2008, Cramlet would be assigned two job

classifications and paid her current rate of $30.56 per hour for work completed as a stenographic court reporter and $21.74 per hour for work completed as a digital court reporter.[3]

### F.  Cramlet's Employment Leading Up to Her Termination

Judge Fleishauer retired as a circuit court judge on November 29, 2011.  Following his retirement, Cramlet was informed that there would be limited need for a court reporter in the courtroom where she normally provided coverage until a new judge was elected or appointed.  Until then, Cramlet would be required to provide court reporting coverage in other courtrooms throughout Judicial Administrative District 6 as required by Wis. Stat. § 751.025 and Supreme Court Rule 70.245.

In December 2011, Portage County Circuit Court made certain changes to its case management system.  As a result, the DAR equipment purchased for Cramlet as an accommodation was no longer part of the standard set-up.  On December 12, 2011, Cramlet met with Brady and the District Court Administrator Ronald Ledford to discuss the DAR equipment.  The parties dispute whether this was an "interactive dialogue" as

---

[3] These rates were derived as follows:

> When Ms. Cramlet used DAR equipment when taking the circuit court record, she was paid as a digital audio reporter with 25 years of experience and no certifications.   Her pay rate as an Official Digital Court Reporter was $22.226/hour, which was $1.079/hour less than what an Official Stenographic Reporter with 25 years of experience with no certifications earned, or $23.305/hour.   When Ms. Cramlet worked as an Official Stenographic Court Reporter she was paid as a stenographic court reporter with 25 years of experience and three certifications, or $31.242/hour.

(Defs.' Reply to PFOFs (dkt. #30) ¶ 74.)

required under the ADA.  In January 2012, the DAR equipment was physically removed, and Ledford and Brady offered to provide other court reporters to Cramlet as coverage if she was not able to perform her stenographic reporter duties.  Cramlet did not agree with this accommodation offer.

On April 30, 2012, Thomas B. Eagon was elected to Judge Fleishauer's seat.  On April 18, 2012, Eagon informed Ledford that he was not interested in appointing Cramlet as his official court reporter.  On April 20, 2012, Cramlet's employment was terminated.  In a formal letter dated the same date, Voelker explained that Cramlet was being terminated because of expiration of her personal appointee status.

## OPINION

### I.  Mootness Challenge to ADA Claim

This court explained in its ruling on the defendants' motion to dismiss that Cramlet would be allowed to proceed on a claim against Voelker limited to injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908).  (5/29/13 Op. & Order (dkt. #12) 6-8.)  In that opinion, however, the court raised a question as to whether any claim for injunctive relief would be "an empty victory" in light of the fact that Cramlet is no longer an employee of the circuit court.  (*Id.* at 8 n.4.)  Not surprisingly, defendants now argue in their motion for summary judgment, that Cramlet cannot meet the *Ex parte Young* exception to Eleventh Amendment immunity because she is no longer employed, rendering her claim for injunctive relief moot.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into

whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).   There is no dispute that Cramlet is no longer employed as a court stenographer.   As a result, even if the court were to treat reinstatement as a requested relief "prospective," there is no ongoing violation.   Cramlet admits as much in her response brief by conceding that her ADA failure to accommodate claim only survives if she is reinstated or rehired as a court reporter.   Unfortunately, neither has occurred, meaning that for purposes of summary judgment any ADA claim is, at most, in the past for which she has no right to compensation, or in the future, for which any right to relief is inchoate.   In either case, plaintiff admits, as she must, there is no evidence of an ongoing failure to accommodate.[4]

While Cramlet agrees with defendants that she must demonstrate an "ongoing violation" for her ADA claim to survive, by focusing her argument solely on her efforts to seek reinstatement, she fails to offer any basis for such a finding.   Accordingly, the court finds that plaintiff's ADA claim for injunctive relief against defendant Voelker fails as a matter of law and will grant defendants' motion for summary judgment on that basis.

---

[4] Even if Cramlet had alleged that her firing was itself a violation of the ADA -- and she does not -- it is undisputed that defendant Voelker did not make that decision.   Rather, the new circuit court judge chose not to hire her as his court reporter, which was his statutory right.   On the facts here, the only claim that could be made against Voelker was for failing to accommodate Cramlet's disability, an alleged violation that is simply not "ongoing."

## II. Federal Financial Assistance Requirement of Rehabilitation Act Claim

At the motion to dismiss stage, the court also ruled that plaintiff had sufficiently alleged that the Wisconsin Supreme Court received federal funding for purposes of stating a Rehabilitation Act claim against that entity.  Plaintiff's claim, however, hits a dead end factually because the Supreme Court was not Cramlet's employer, nor was the Supreme Court the entity subjecting her to the alleged discrimination.  While Voelker, as the Director of State Courts, was certainly involved in her employment and the alleged discrimination and failure to accommodate, his actions do not implicate the Supreme Court.

To state a claim under § 504 of the Rehabilitation Act, a plaintiff must allege that she was "subjected to discrimination under [a] program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a); *see also Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997) (listing the fourth element of such a claim as "the program or activity in question received federal financial assistance").  The thrust of defendants' argument is that Cramlet was not "involved in any way with the Supreme Court of Wisconsin, but rather was employed as a court reporter within the Circuit Court, an entity that did not receive federal financial assistance."  (Defs.' Reply. (dkt. #34) 6.)

As the court explained in ruling on defendants' motion to dismiss, the 1988 amendment changed the scope of the Rehabilitation Act, defining "program or activity to mean 'all the operations' of a department, agency, district, or other instrumentality of state or local government that receives or dispenses federal financial assistance".  *Schroeder v. City of Chi.*, 927 F.2d 957, 962 (7th Cir. 1991).  Still, plaintiff has failed to point to

10

any case law -- or really develop any argument -- that the reach of the federal funding somehow extends beyond a particular agency or department.

While the Supreme Court is the highest court in Wisconsin, this does not mean that the federal funding it receives is "extend[ed] or distribute[d]" to other parts of the court system.  (Pl.'s Opp'n (dkt. #26) 6.)   To the contrary, defendants submitted undisputed evidence that the federal funding received by the Supreme Court is *not* distributed to the Circuit Courts.  In that way, the Circuit Courts are neither a direct nor indirect recipient of federal aid.  Even if the Circuit Courts derived some benefit from the Wisconsin Supreme Court's federal funding, this is not sufficient to implicate the Rehabilitation Act.  *See Grzan*, 104 F.3d at 120 ("The coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual agreement." (internal citation and quotation marks omitted)).

Nor does Cramlet allege that she was discriminated against by a program or activity of the Supreme Court.  Rather, from her allegations, Voelker in his capacity as Director of the State Courts and his office discriminated against Cramlet in her employment with the Circuit Courts.  There is no dispute that the Circuit Courts did not receive federal funding during the relevant period of time, and this court has already determined that Cramlet could not allege a claim against Voelker individually because his only federal funding was his salary.  (5/29/13 Op. & Order (dkt. #12) 8-10.)[5]

---

[5] Perhaps Cramlet could have stated a claim against the Office of the Director of State Courts, but this would be a thin reed indeed to hang a § 504 claim.  In any event, she failed to name the Office as a defendant and it is simply too late to do so now.

11

In an attempt to save her claim, Cramlet posits two arguments, both of which the court rejects.  First, Cramlet argues that she listed the Supreme Court as her employer on the EEOC charge and that "defendants acknowledged that the Supreme Court of Wisconsin is the correct name of the employer named in the charge per Wis. Stat. § 751.02."  (Pl.'s PFOFs (dkt. #27) ¶ 20.)  Putting aside the fact that plaintiff failed to submit the charge or otherwise cite to evidence that defendants conceded this point in EEOC proceedings, Cramlet's naming of the Wisconsin Supreme Court as her employer on the charge does not save her claim here.  "The Equal Employment Opportunity Act grants federal employees the right to file suit in federal court, but only against the *proper* defendant."  *Norris v. Salazar*, 885 F. Supp. 2d 402, 414 (D. D.C. 2012 (citing 42 U.S.C. § 2000e *et seq.*) (rejecting plaintiff's argument that the court should look to the administrative process to determine the appropriate defendant).  Here, Cramlet has failed to submit any evidence that the Wisconsin Supreme Court or Voelker were her employer or otherwise provide programs or activities which discriminated against her.

Second, Cramlet contends that her employee manual mentions the Rehabilitation Act.  (Pl.'s Opp'n (dkt. #26) 9 (citing Cramlet Aff., Ex. D (dkt. #29-4).)  In particular the manual provides:

> The court system shares the goals of the Americans with Disabilities Act and Section 504 of the Vocational Rehabilitation Act, and has committed itself to implementing and enforcing civil rights legislation so that people with disabilities have full access to employment and tenure with the court system.

(*Id.*)  This esposual, however, does not create a legal obligation under the Rehabilitation Act.  Perhaps at some other point in time the Circuit Courts received federal funding that

would have triggered such an obligation under the Rehabilitation Act, but it is undisputed that the Circuit Courts did not receive federal funding during the relevant time period for Cramlet's claim.[6]

ORDER

IT IS ORDERED that:

1) defendants' motion for summary judgment (dkt. #16) is GRANTED; and

2) the clerk of the court is directed to enter judgment in favor of defendants and close this case.

Entered this 31 day of October, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

_____

[6] Because the court finds that plaintiffs' claims fail as a matter of law, it does not consider defendants' third basis for summary judgment -- that plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find that defendants discriminated because of or failed to accommodate her disability.